Well, this is the case of People v. Eugene Nelson, 18-14-83. The panel you have before you is the First Division, First Division, First District, Second Division of the Appellate Court, which in this case is Justice Cynthia Cobb, Justice Terry Lavin, and myself, Justice Smith. Our procedure is as follows. First, we let the appellant present his case, and we do not interrupt, and we give you 10-15 minutes. And after you've presented your case, then we will ask questions. Then the appellee will have their opportunity to present their case, and again, then the questions. Then the appellant does the closing. So with that in mind, you may proceed. May it please the Court. Good morning, Your Honors Counsel. My name is Chris Bendick from the Office of the State Appellate Defender, and I represent the appellant, Eugene Nelson. My intention is to address both arguments in the brief, starting with the trial court's denial of Eugene's motion for a mistrial. Eugene's case presents a matter of first impression in Illinois. Is a defendant entitled to a mistrial if the parties learn that the jurors did not take their trial oath? Here, Eugene's jurors did not take the proper trial oath and were not sworn in prior to the state presenting its case. And when the parties realized the jurors had not been sworn in, Eugene's counsel made a motion for mistrial. The trial court erred in denying that motion, and such an error cannot be excused as harmless given the gravity of the error and the weakness in the state's case against Eugene. Any analysis of the trial oath issue should begin by recognizing the vital importance to the administration of justice that occurs via that oath. A jury is defined as a group of persons sworn to examine the evidence in a case and render a verdict. The oath has been an integral part to the fact-finding process since ancient times, and it was an accepted feature of a properly constituted jury at common law. A juror's trial oath is an essential promise to lay aside one's impressions or opinion and render a verdict based on the evidence presented in court. Further, the oath taken during jury selection by potential jurors is entirely separate and has no impact upon the trial oath taken by the selected and impaneled jurors. A preliminary oath differs from a trial oath in that the preliminary oath is administered before voir dire and requires prospective jurors to answer truthfully all questions concerning their qualifications. The trial oath, however, requires jurors to swear or affirm that they will give careful attention to the proceedings, abide by the court's instructions, and render a verdict in accordance with the law and evidence. Before a jury trial can begin, our Criminal Code of Procedure, Supreme Court Rule 434E, and case law require that a jury must be impaneled and sworn. Until the jury is impaneled and sworn, the defendant continues to possess vital rights, for example, the ability to choose a bench over a jury. There are few, if any, rules of criminal procedure clearer than the rule that jeopardy attaches when the jury is impaneled and sworn. If only some of the jurors are impaneled and sworn before a mistrial occurs, there are no double jeopardy concerns. Thus, with that precedent in mind as to the solemn importance of the trial oath, and turning to the facts of Eugene's case, the record is clear his second jury did not swear its trial oath before the state began its case in chief. It was only at the close of the state's case that the parties realized that the jurors had not been sworn. And despite the trial court telling Eugene's counsel that he was going to give the defense some options, the court immediately backtracked from that offer when Eugene's counsel made a motion for mistrial based upon the then unsworn jurors. The trial court erred when it refused to assent to Eugene's motion. While there is no Illinois case directly on point, several out-of-state cases demonstrate why the trial court here erred. In Steele v. Indiana, on the second day of trial, after five state's witnesses had testified, the defendant learned that the jury had not been sworn, and he made a motion for mistrial due to that lack of swearing in. The Indiana appellate court reversed the defendant's conviction where that motion was denied. The Steele court explained what should occur in cases like Eugene's, where the lack of a trial oath by the jury is discovered mid-trial. The defendant's motion for mistrial should be granted. Then a new panel or the same panel of jurors should have been sworn in, and the trial started anew. Steele is not an outlier. People v. Pribble, which is a Michigan appellate court case in addressing double jeopardy concerns, the Michigan appellate court concluded it had been proper for the trial court to declare a mistrial due to the jury not having taken its trial oath, which was discovered just like Eugene's case mid-trial. The Pribble court explained what should happen in these cases. It is possible that the parties in the court could have agreed to swear in the jury at that time, the defect was discovered, and continue the trial. If the parties could not agree to this, and then the trial court could not have continued with the trial. The defect should not be correctable without the consent of all. At the same time, if consent is not obtained, then a new trial should be allowable since the in the United States v. Dinitz, the United States Supreme Court recognized that where a trial, judges, or prosecutors err occurs warranting a mistrial. The decision to end the proceedings in the mistrial remains solely with the defendant. The court there said the important considerations for double jeopardy purposes is that the defendant retained primary control over the course to be that have found that the denial of a mistrial under similar circumstances to be subject to a harmless error analysis. That's exemplified by the Alston v. Maryland decision. Simply put, those decisions finding such error to be harmless do not comport with the Supreme Court's decision in Dinitz. In fact, the cases cited in the briefs employing a harmless error approach failed to even address Dinitz. This court should adopt the Pribble and Steele approaches and find the trial court here committed reversible error when it denied Eugene's motion for a mistrial. But even if this court adopts the harmless error approach in Alston, a new trial should still occur. Notably, the state has made no argument in its response brief that the error here was harmless beyond reasonable doubt. Given that lack of argument, people v. Diggins forecloses the state from demonstrating that the error here was harmless. And even if this court avoids the the outcome is the same because the evidence against Eugene was not overwhelming. Instead of tackling its burden to demonstrate that the error here was harmless, the state claims Eugene did not preserve the error. But Eugene's counsel did all that was required under precedent in order to preserve the error. He made a motion for mistrial when the parties realized the error occurred, and the court's denial of that motion is preserved in the post-trial motion. Even if this court agrees with the state's claim that the error here was not preserved, the state's brief does not rebut Eugene's opening brief argument that the evidence here was closely balanced given the pure credibility contest at hand. If there are no further questions as to this issue, I'm going to turn to the sufficiency of the evidence argument. This court need not remand the case for a new trial as the state failed to satisfy its burden to prove Eugene guilty beyond reasonable doubt. Eugene's first jury trial, consisting of much of the same evidence as the second trial, ended in a hung jury. The physical evidence does not support the officer's version of events. Prior to arriving in the vicinity of the 1500 North Block of Ridgeway, the officers had received no reports of drug sales there by Eugene. They engaged in hand-to-hand transactions with Officer Armando Ugarte. Officers found no drugs on Eugene, nor any pre-recorded funds just minutes after the purported drug deal where pre-recorded funds were allegedly used. No forensic evidence tied Eugene to the three small bags of heroin. The state introduced no inculpatory statement by Eugene, and Officer William Lapine, the officer who conducted surveillance of Eugene and Armando's interactions, did not record the events. Thus, the state's case lives or dies with the credibility of William and Armando. But William's claim for why he did not order the third man in a white t-shirt stopped is suspect at best. William testified that the man in a white t-shirt did not arrive and then depart the scene until after Armando drove away. And while William claimed he did not order his enforcement officers to stop the man with the white t-shirt because he did not want to ruin the operation, no other officer corroborated this fact. And the operation had already allegedly happened. William and Armando also differed massively on where Eugene allegedly interacted with co-defendant Traveris. Armando said four buildings north of his location, whereas William said basically right across the street, maybe two to three feet north of Armando. In sum, the state's case consisted of weak testimony from Armando and William, which was not corroborated by the presence of any pre-recorded funds or narcotics on Eugene. And any explanation for the lack of those funds or narcotics is premised on behavior that is contrary to human experience, let alone a veteran narcotic officer's experience. These weaknesses are fatal to the state's case as they serious doubt that Eugene did anything to Armando other than give him a sarcastic response to Armando's request for heroin. Eugene's first jury was on the right track when the trial resulted in a mistrial from a hung jury. The state failed to prove Eugene guilty beyond a reasonable doubt, and this court should reverse his conviction. If there are no further questions, Your Honor, Eugene asked to reverse his conviction. Alternatively, he asked for a new trial. Questions? Go ahead. I'll have one. I have one question for you. Among the cases that you discuss, I didn't hear you talk about people versus Abadia. Why shouldn't the court follow that case? In Abadia, trial counsel did not object to the late swearing in. So that's why that case is our case. And in fact, in Abadia, it said what should happen is what trial counsel did here, preserve the air, make a motion for mistrial. And that was a big factor in Abadia was that trial counsel simply didn't do that. And it was raised via plain air on appeal. But trial counsel only made that motion after the court pointed out the issue regarding the earlier sworn in the jury, right? Correct. Yes. All parties discovered mid trial that air occurred, and this court should adopt the steel approach that if there is a discovery mid trial that the jury is not sworn in and the defense controls what should occur there. Either make a motion for mistrial should be granted. This trial starts anew, whether it's with the same panel or a different panel, but with a proper swearing in, or counsel could with defendants approval, agreed to the late swearing in and then there's no issue. But the decision remains in the defendants control at that point when we discover that there's a late, there hasn't been a swearing in yet. There is no Illinois case that you cited to in your briefs, an Illinois case that says the trial court must defer to the wishes of the defendant. It's not unusual for a judge to inquire of the parties in the manner in which they wish the court to proceed. But is the court bound by that? I would, I would say your honor that the Dennett's decision from the Supreme Court shows that the decision is in the defendants hands at that point when it's a trial court or prosecutorial error, which here we clearly have a trial court error, not swearing in the jury. The control at that point is in the defendants hands, whether he wants a mistrial or some other way to rectify that error and continue with the same jury. But that decision is in the hands of the defendant. But to answer your question regarding that there not being some specific Illinois case directing this issue. No, your honor, you are correct that we don't have a specific case with this specific facts. I think a body is probably the closest we come to because the Moon decision is the lack of swearing in and that's still pending in the Illinois Supreme Court as of today. But you cited some cases in your brief from foreign jurisdictions where there's not been a swearing in as all at all as well. And I assume you cited to them because you Moon just demonstrates. I think the reason why we laid out the three different areas where there's a complete lack of swearing in or a belated swearing in and the different cases from the various jurisdictions is to demonstrate the importance of the lack of swearing in a jury. I mean, it is a crucial aspect to any jury trial that, frankly, a jury is not a jury until it is paneled and sworn. I mean, the case law is pretty clear on that. So Moon is instructive to the severity there. And we are a position, of course, is that the dissent got it right in that case that it is a structural error. But that does not whether the Illinois Supreme Court ends up agreeing or not with the majority or the minority decision in Moon should not impact this court's what needed to happen. File a motion for make an oral motion for mistrial when the error is discovered. Putting aside this alleged error because rule 434 and the Thompson case put that in doubt. But my question is putting that aside, both sides agreed that there was nothing other than this that was not reasonable in the case. There was no discussion by either sides that anything else occurred that was not what would be normally occur in a jury trial. I'm saying that there was no other trial. Besides this, what else did you find that's wrong with the case? Well, Your Honor, Eugene was not found guilty beyond a reasonable doubt is our contention as well. Given Williams and Armando's testimony, that is. We get best, shall we say, as to Eugene's involvement in the events. So that there's a appeal and was alleged in the post trial motion as well. You know, you seem to put a fair amount of emphasis on the fact that the first case ended in a mistrial and then you get go back to trial and you decide again. Defendant decides again. They want a trial by jury. You have a jury there and there's the technical issue of whether or not they were sworn. The defense lawyer doesn't bring it up. The trial judge brings it up. And you say that the first jury was heading in the right direction. Do you have anything in the record as to what the jury, whether there was jury polling and how many were going to quit and how many were going to convict? I don't have that offhand. Your Honor, I don't believe that's demonstrated in the record as to the breakdown of the first year. I think it was. I'd have to say I can't say that right now, Your Honor. I mean, it could have been 11 to one in favor of conviction. And vice versa. Correct, Your Honor. Okay, that's all I have. Douglas, you may proceed. Thank you. Good morning, Your Honors. Good morning, counsel. Assistant State's Attorney Douglas Harvath on behalf of the people of the state of Illinois. Initially, I would like to express my profound gratitude to this court for postponing this oral argument in light of my circumstances and counsel was very gracious. So I'd like to spread that off record. I'm very appreciative. May it please the court. I'm going to start with the threshold issue of the sufficiency of the evidence claim. This court should affirm the defendant's conviction for delivery of a controlled substance where despite the officer's failure to recover the prerecorded funds from the third participant in the drug sale. And despite what we characterize as a minor discrepancy about where the codefendant stood, the jury was well within its function to credit the officer's testimony. That defendant sold heroin to an undercover officer and also to reject defendant's testimony is not credible. Officer Lapine explained exactly why he did not have the money on, excuse me, why the defendant didn't have the money on him when he was arrested. He gave the money to the codefendant, Stevenson. And Officer Lapine also explained why Stevenson didn't have the money either because he handed the money to the third participant and the drug sale. This is a classic drug sale arrangement designed to maintain the proceeds and the drug stash to create deniability and to thwart arrest. Each participant had an individual role in the offense and the defendant's role was to deliver the drugs and take the customer's money and to give it to the codefendant who in turn gave it to the third person. This is not contrary to human experience for officers to refrain from arresting a third person or any other participant in a drug sale because they want to avoid compromising their ability to arrest the primary actors. And the prerecorded funds are frequently abandoned for this very reason. And this court has repeatedly held that the failure to recover those funds does not itself create reasonable doubt. And in any event, with regard to the sufficiency of the evidence, the claims regarding the officer's credibility was expressly raised at trial and rejected by the jury. This court, you know, it's elementary that the appellate court cannot re-weigh the evidence and substitute the trier facts credibility determinations simply because the defendant disagrees with them. Contrary to the defendant's assertions, this court is not free to re-weigh the evidence and engage in sort of de novo review of his guilt. This is not the standard of review. And while we acknowledge and we understand that the jury's determinations are not conclusive, they may only be rejected if the evidence is so unreasonable and probable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. That simply cannot be held as to the evidence in the instant case. Turning to the second issue, although the belated jury oath was a statutory and rule-based error, it did not deprive the defendant of a fair trial nor undermine the integrity of the judicial process such that the defendant was per se entitled to a mistrial. This court has expressly held in Abadia that a belated swearing does not itself substantially prejudice the defendant such that he is deprived of a fair trial. And this court, of course, in Moon has held that even the total failure to swear a jury is subject to a showing of prejudice. In resolving the question of prejudice on this exact issue, reviewing courts look to other indicia that demonstrate the jury's pledge to fairly decide the case based on the evidence and the law and shows that the jury will adhere to the principles in the preliminary instructions, the honor, excuse me, the admonishments given by the judge and the rule 43, 431B admonishments. That is, in sum, the reviewing courts ascertain whether the jury received the functional equivalent of the trial oaths and where the record otherwise demonstrably establishes the jury's commitment to the very principles contained in the oath itself, as in this case, there's no need for a mistrial or a new trial. All this was done in this case under oath during voir dire, the juries were admonished to wait until the conclusion of all the evidence and the closing arguments to decide their verdict, to remain objective, to keep an open mind and set aside sympathy, bias and prejudice and base their verdict on the evidence and the law and the judge's instructions. And the jury was also admonished and understood and these promises themselves made under oaths are literally identical and therefore the functional equivalent of the formal trial oaths. Beyond all of this, even more importantly, in this case, the trial court actually administered the oath halfway through the trial and specifically ascertained that the jury would be able to view all of the evidence, including the evidence introduced earlier before being formally sworn as if it had received the oath earlier. The prejudice in any respect by the belated nature of the oath. And this is why he maintains that he had an absolute right to a mistrial when the trial court informed the parties that the jury had not been sworn because jeopardy had not attached. But defendant didn't make this argument at the time. And I'm not making that argument in terms of forfeiture. He never intimated in any respect that he wished to waive a jury. As you know, I believe as Justice Lavin pointed out, he had already had a jury before this. This was the second jury. There is absolutely nothing in the record to suggest that the defendant wanted to waive a jury at that juncture. The trial court recognized correctly that there was nothing to support this because the jury was given the functional equivalent of the oaths when the court issued the preliminary instructions and during voir dire and the trial court ensured that the jury would be fair and impartial by belatedly swearing the jury. Defense counsel himself agreed after trial with the trial court on this point stating he was quote not alleging a very serious breach and that it was only a quote technical error. While the defendant asked this court to adopt a particular approach as he says on this issue based on foreign cases, Illinois law, the law that this court is bound by is already very clear when a trial court is faced with a motion for mistrial. The Supreme Court in Nelson said quote a mistrial should be granted when the error of such gravity has occurred that defendant has been denied fundamental fairness such that continuation of trial would defeat the ends of justice. That is a motion for mistrial should be granted when an error cannot be fixed. In addition to abadia, several of defendant's own cases and to his absolute credit, his brief as an officer of the court, they expressly hold that failure to promptly swear the jury is not an issue that cannot be fixed. It can be easily fixed by belatedly swearing the jury and ensuring that the jury is able to view all the evidence as if it had been sworn earlier and this is precisely what the trial court did in this case and this was not an abuse of discretion and that is the standard of review for rulings on motions for mistrial. With regard to defendant's harmlessness argument, suggesting that the state has sort of waived any ability to attack the his claim regarding the closeness of the evidence. His harmlessness argument in response to our brief is fundamentally flawed. The prejudice question looks not at the purported closeness of the evidence as if some inadmissible evidence had been erroneously introduced but whether the trial jury received the instructions and admonishments that were tantamount to the oath at the beginning and whether the trial court adequately ascertained that the jury would be able to give the defendant a fair trial when it belatedly swore the jury. Because both of those things happened, the defendant was not prejudiced and therefore he's not entitled to a mistrial. If the total failure to swear a jury as the court held in Moon and I acknowledge that the case is pending before the Supreme Court, if the total failure to swear a jury or the failure to admonish the jurors about the Zare principles as the Supreme Court held in Thompson, the Zare principles whose very purpose is to ensure the selection of a fair and partial jury. If those aren't errors that warrant per se a new trial, then a defendant is not per se entitled to a mistrial simply because the jury was belatedly sworn. There's simply no difference between whether or not a trial judge should grant a mistrial or a trial judge or appellate court should grant a new trial. The result is the same. For all these reasons, this court should affirm the defendant's conviction for delivery of controlled substance. Questions? None. None. Well, Christophe, I guess you can proceed. Your voice is off. You're muted. I apologize. I'm muted during the ASA Harvest argument. Apologize about that. Just to briefly address some of the points brought up by opposing counsel, the mistrial occurs not because there was a belated swearing in here. It's because there was no swearing in and there was no jury until that swearing in happened. So we don't have a proper trial and can never have a proper trial until a jury is empaneled and sworn by statute, by Supreme Court rule, and by case law. Notably in the state's response, it did not address Dennett's. Dennett's instructs this court that when there's a trial or prosecutorial error that warrants a trial, it remains in the control of the defendant. And the defendant is, of course, faced with a hops and choice sometimes, but that's what occurs and what should occur, and that's what this court should hold. The state's harmless error analysis, it's always the state's burden to demonstrate that a trial error was harmless if this court adopts the harmless error approach of Alston. So the state does need to address that. That's regarding the sufficiency of the evidence. The state brought up that, you know, these pre-recorded funds, we don't have to recover them. And the officer didn't want to compromise the operation. The operation was over. They had seen the drug deal that they came there apparently to see. And five, 10 minutes later pass, there's no reason not to have officer William Lapine, have other enforcement officers stop the person that has the pre-recorded funds. Pre-recorded funds, that's the whole point of using pre-recorded funds, is it's, that locks down the case. If this court has no further questions on either issue on the sufficiency or the mistrial issue, we ask for the relief in the briefs and thank your honors for your time today. No questions. Okay, I think we're through here. I guess we're through. Both of you made nice presentations. It's an interesting and unusual case. I had a similar case, but it settled at the end. Um, so we'll let you know as soon as we have the results. Thank you.